**THE LAW OFFICE OF FAHAD SHARIF, PC**
FAHAD SHARIF, ESQ. (SBN# 322563)
*fshariflaw@gmail.com*
ROGER L. WILKERSON, III, ESQ. (SBN #327889)
*roger@lawrriorinc.com*
18960 Ventura Blvd #440
Tarzana, CA 91356
Telephone:  (310) 361-5614
Facsimile:  (310) 362-0434

Attorneys for Plaintiff, JOHN EVANS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **JOHN EVANS,** an individual,<br><br>                    Plaintiffs,<br><br>          v.<br><br>**NBCUNIVERSAL MEDIA, LLC**, a corporation**; UNIVERSAL PICTURES dba UNIVERSAL CITY STUDIOS, LLC**, a corporation; **JERRY SEINFELD**, an individual; **STACEY SNIDER**, an individual, and DOES, 1 to 10, inclusive,<br><br>                    Defendants. | CASE NO.   2:21-cv-00984-CBM-PD<br><br>*Assigned to Hon. Consuelo B. Marshall*<br><br>**PLAINTIFF JOHN EVANS NOTICE OF OPPOSITION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Date:**          **June 22, 2021**<br>**Time:**          **10:00 a.m.**<br>**Dept.:**         **8B**<br><br>Opposition to Defendant's Request for Judicial Notice; Declarations of John Evans; and Declaration of Roger Wilkerson; and [Proposed] Order filed concurrently herewith)<br><br>Complaint filed:  February 5, 2021 |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 22, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8B of the above-entitled Court, located at First Street Courthouse, 350 W. 1st Street, 8th Floor, Los Angeles, California 90012, Plaintiff , JOHN EVANS (hereinafter "Plaintiff") will appear and hereby opposes Defendants' NBCUniversal Media, LLC, Universal Pictures, a division of Universal City Studios LLC, DreamWorks Animation, LLC ("DreamWorks"), and all related entities (collectively herein, "NBCUniversal"), Jerry Seinfeld ("Seinfeld"), and Stacey Snider ("Snider") (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and Request for Judicial Notice.

      Plaintiff opposes Defendants' motion to dismiss because, despite the Defendants' numerous attempts to use their privilege, status, and wealth to obfuscate ownership and liability, when the Court evaluates all factual allegation in the complaint as true and viewed in the light most favorable to the non-moving party, dismissal is improper at this stage for the following reasons: (1) Plaintiff has stated a plausible claim upon which relief can be granted; (2) Judgment should not be entered in Defendants' favor on Plaintiff's First Claim for Relief for Copyright Infringement because Plaintiff has plausibly alleged a nexus between the recipients of Plaintiff's animated-screenplay for Bee Movie and the producers and owners of the infringing film; (3) Plaintiff has plausibly alleged access to his animated-screenplay by the Defendants in the form of a typed letter by Co-Defendant Snider that is on Co-Defendant NBCUniversal's letterhead; (4) Plaintiff has plausibly alleged substantial similarity Plaintiff's animated-screenplay and the infringing-film in his Complaint; (5) Defendants' subsequent attempts to point to the differences in their infringing-film as a defense, in fact boasts the validity of Plaintiff's claim and the evaluation letter

attached to Plaintiff's Complaint (Complaint ¶¶ 23-31); (6) Plaintiff's Second, Third and Fourth Claims for Relief, for Unfair Competition, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress, respectively, Are Not Preempted by the Copyright Act because existing law is being applied to a set of facts significantly distinguishable from those stated in all other published opinions; and (7) Defendants' Request for judicial notice is improper because the relationship of the Co-Defendants' subsidiary companies are subject to reasonable dispute.

This Opposition to Defendants' Motion to Dismiss is made following the conference of counsel pursuant to Central District Local Rule 7–3, which took place on May 10, 2021. Declaration of Roger L. Wilkerson ("Wilkerson Decl."), ¶5.

This Opposition is based on the following Memorandum of Points and Authorities, the Declaration of John Evans, the Declaration of Roger L. Wilkerson, Esq, and any documentary and/or oral argument as may be presented at the time of the hearing of the Motion.

DATED: June 5, 2021                                   LAW OFFICES OF FAHAD SHARIF

By: *Roger L. Wilkerson*
ROGER L. WILKERSON, ESQ.
FAHAD SHARIF, ESQ.
Attorneys for Plaintiff, **JOHN EVANS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION.................................................................1

II. FACTUAL ALLEGATIONS......................................................2

III. LEGAL STANDARDS..........................................................6

IV. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE OF THE
INDEPENDENCE BETWEEN DREAMWORKS ANIMATION AND
DREAMWORKS PICTURES IS NOT APPROPRIATE BECAUSE IT IS
SUBJECT TO REASONABLE DISPUTE IN THAT BOTH ARE
SUBSIDIARIES WHO HAVE SHIFTED THEIR ASSETS TO THE

PARENT COMPANY NBCUNIVERSAL MEDIA, LLC.  ...........................7

V. PLAINTIFF HAS STATED A PLAUSIBLE CLAIM OF COPYRIGHT
INFRINGEMENT AGAINST THE DEFENDANTS UPON WHICH RELIEF
CAN BE GRANTED ......................................................11

VI. JUDGMENT SHOULD NOT BE ENTERED IN FAVOR OF THE
DEFENDANTS AS IT PERTAINS TO PLAINTIFF'S FIRST CLAIM FOR
RELIEF FOR COPYRIGHT INFRINGEMENT BECAUSE PLAINTIFFHAS
PLAUSIBLY ALLEGED THAT THE DEFENDANTS BOTH
INDIVIDUALLY AND COLLECTIVELY HAD ACCESS TO THE
PLAINTIFF'S ANIMATED-SCREENPLAY FOR THE FILM BEE MOVIE
IN THE FORM A LETTER SIGNED BY CO-DEFENDANT STACEY
SNIDER ON CO-DEFENDANT NBCUNIVERSAL'S LETTERHEAD.....13

VII. JUDGMENT SHOULD NOT BE ENTERED IN FAVOR OF THE
DEFENDANTS AS IT PERTAINS TO PLAINTIFF'S FIRST CLAIM FOR
RELIEF FOR COPYRIGHT INFRINGEMENT BECAUSE PLAINTIFF
HAS PLAUSIBLY ALLEGED SUBSTANTIAL SIMILARITY BETWEEN
PLAINTIFF'S ANIMATED-SCREENPLAY AND THE DEFENDANTS'
INFRINGING FILM  ....................................................14

VIII. PLAINTIFF'S SECOND, THIRD AND FOURTH CLAIMS FOR
RELIEF, FOR UNFAIR COMPETITION, INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS, RESPECTIVELY, ARE NOT
PREEMPTED BY THE COPYRIGHT ACT BECAUSE EXISTING LAW IS
BEING APPLIED TO A SET OF FACTS SIGNIFICANTLY
DISTINGUISHABLE FROM THOSE STATED IN ALL OTHER
PUBLISHED OPINIONS   .................................................15

IX. CONCLUSION.................................................................16

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                    Page

*Skilstaf, Inc. v. CVS Caremark Corp.*
  69 F.3d 1005, 1014 (9th Cir. 2012) ................................................................. 6

*OSU Student Alliance v. Ray,*
  5699 F.3d 1053, 1058 (9th Cir. 2012) ............................................................. 6

*Guillen v. Bank of America Corp.*
  No. 5:10-cv-05825, 2011 WL 4071996 (N.D. Cal. 2011) ................................ 6

*Usher v. City of Los Angeles,*
  828 F.2d 556, 561 (9th Cir. 1987) ................................................................... 6

*Lacey v. Maricopa County,*
  693 F.3d 896, 911 (9th Cir. 2012) ................................................................... 6

*Ashcroft v. Iqbal,*
  556 U.S. 662, 677 (2009) ................................................................................ 6

*Peter F. Gaito Architecture LLC v. Simone Dev. Corp.,*
  602 F.3d 57 (2d Cir. 2010) .............................................................................. 7

Knieval v. ESPN,
  393 F.3d1068(9thCir.2005) ............................................................................ 7

*Jorgensen v. Epic/Sony Records*
  351 F.3d 46 (2d Cir. 2003) .............................................................................. 7

*Lee v. City of L.A.,*
  250 F.3d 668, 688-89 (9th Cir. 2001) ............................................................. 7

*Galbraith v. Cty. of Santa Clara*
  307 F.3d1119,1125-26(9thCir.2002) ............................................................. 8

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992, 998 (9th Cir. 2010) ................................................................... 8

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  592F.3d954,960(9thCir.2010) ....................................................................... 8

*Grill v. Lincoln Nat'l Life Ins. Co.,*
  2014 WL 12588652 (C.D. Cal. June 3, 2014) ................................................. 8

*Washington v. ViacomCBS, Inc.,*
  2020 WL 5823568 (C.D. Cal. Aug. 20, 2020) (Marshall, J.) ......................... 11

*Three Boys Music Corp. v. Bolton,*
  212 F.3d 477, 481 (9th Cir. 2000) ................................................................. 11

# TABLE OF AUTHORITIES

**FEDERAL STATUTES**                                                                **Page**

Copyright Act of The United States, U.S.C. §101, et seq...............................................2

17 U.S.C. § 411(a) ..................................................................................................... 13

Federal Rule of Civil Procedure 12(b)(6)..............................................................2,7

Federal Rule of Evidence 201(b)............................................................................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case arises from a claim of copyright infringement filed by Plaintiff on February 5, 2021, ("Complaint")  and epitomizes the unfair balance in protection under the law that exists between those who enjoy elite privilege, social-status, and wealth, such as the Defendants and those who do not.  In filing this case, Plaintiff asks the court to attempt to apply existing copyright infringement rule of law to a set of facts significantly different from those stated in all other published opinions.

It is imperative to note at this point, although intent is not an element of copyright infringement, but fraud and intentional concealment by the Defendants, individually and collectively, may be relevant to Plaintiff's additional causes of action. Additionally noting, that the formation of subsidiary companies, or shell-companies, to avoid legal liability is nothing new to the corporate world. It is a useful tool of those who have the means to take advantage of such a legal-loopholes. However, the manner in which a studio, via an executive, can solicit a screenplay, then place said executive into what amounts to be a subsidiary company of said studio, in order to produce an infringing-film that will later be sold back to the original studio for the purpose of obfuscating title and liability, is a matter that has not yet been adjudicated in this court. For the sake of clarity, my office has deemed this purposeful attenuation and dilution of ownership of an original work of authorship as – "copyright laundering."

As described in greater detail below, the gravamen of Plaintiff's complaint alleges that the Defendants, individually and collectively, solicited Plaintiff's animated-screenplay for Bee Movie, confessed to access of Plaintiff's animated-screenplay, and are now purposefully availing the

infringing-film for their own profit and exploitation without Plaintiff's permission.

The manner in which the Defendants engaged in this form of copyright infringement highlights an apparent conflict and under-developed section of copyright law.

Stripped of its rhetoric, Defendants' Motion premises dismissal on two simple grounds: (1) Plaintiff's claim can't be plausible because of the Defendants' collective intentional acts to cloud the history of who had access to Plaintiff's animated screenplay for Bee Movie; and (2) Plaintiff's additional claims are barred by the copyright act because of their intention obfuscation, or laundering of the copyrights for Bee Movie. To grant Defendants' Motion to Dismiss at this point would essentially create a blueprint for those with the ability to create shell-companies or shift around employees, to intentionally circumvent the protections afforded to authors under the Copyright Act of the United States, 17 U.S.C. § 101, et seq., in an afront to the very essence of copyright jurisprudence. Likewise, Defendants' Request for Judicial Notice is inappropriate as the relationships between the Defendants and their subsidiary companies are subject to reasonable dispute.

## II.   FACTUAL ALLEGATIONS

For the purposes of this motion, Plaintiff realleges all statements in Plaintiff's Complaint ¶¶ 1-48 as plausible, true, and sufficient for all of Plaintiff's causes of action.

On April 14, 1999, then fifty-two (52) year old author and screenplay-writer, Mr. Evans, received a Certificate of Registration from the United States Copyright Office for the original animated screenplay work entitled Bee Movie, including the alternate title "The Bee Movie". Complaint ¶¶ 4,18-19;

**Exhibit "1" [United States Copyright Office Certificate of Registration for the Animated Screenplay Bee Movie, Reg# PAU2-399-668]** attached herein. Plaintiff came up with the idea for the Bee Movie screenplay while working pest control for the City of Los Angeles Department of Recreation and Parks. Evans Decl. ¶6.  Knowing this original work was uniquely precious, Plaintiff took the additional step of placing an original copy of his script into a sealed United States Post Service ("USPS") envelope, sealing that envelope with the intent of never opening it again unless to prove authenticity, sending the sealed envelope via USPS certified mail, post-marked 29, 1999, to date his intellectual property, thereby helping to establish that the screenplay was and  has been in his possession since that date. Complaint ¶¶20-22; Exhibit 2.

Plaintiff then began the process of submitting his script for "Bee Movie" to numerous studios. Complaint ¶¶21; Exhibit 5 [Various Rejection Letters for the Animated Screenplay Bee Movie] attached hereto Evans Decl. ¶8. From approximately 1999 to 2006, Stacey Snider was the Co-Chairman of Universal Pictures. Luella Stoker, an in-law to Plaintiff at the time, worked as a house-keeper for Ms. Snider for the duration of 1999. (See Exhibit "6" [Picture of Mr. Evans' stepmother with Stacey Snider at a Birthday Party] attached hereto Evans Decl. ¶9. As a favor to her house-keeper, Ms. Snider agreed to read and review Mr. Evans' original animated screenplay for Bee Movie. Complaint ¶22.

On August 30, 1999, Plaintiff received two detailed evaluation letters, from Stacey Snider, the then Co-Chairman of Universal Pictures, regarding the Bee Movie screenplay and a second live-action screenplay entitled Tomorrow Today. Complaint ¶23; Exhibit 3; see also **Exhibit "7"** [ Universal Pictures Evaluation Letter for the Animated Screenplay BEE Movie and Tomorrow Today from Stacey Snider] attached hereto Evans Decl. ¶10.  In the letter, Ms. Snider clearly states:

1
2
3
4
5
6
7

> "Thank you for submitting BEE MOVIE.
>
> It's a humorous and entertaining story, and contained many delightful moments. Although it is not something the studio would like to pursue at this time, I would like to offer one of our story analyst's comments if you are interested in doing more work on your script. There's a cute idea for an animated feature here, with some promising character concepts."

8
9
10

Co-Defendant Snider proceeds with providing in-depth feedback of Plaintiff's animated-screenplay and even provides suggestions for characters and plot, suggesting she had a clear and extensive understanding of Plaintiff's work. *Id.*

11
12
13
14
15
16
17
18
19
20

On November 2, 2007, DreamWorks released their animation film "Bee Movie." Complaint ¶¶ 24-35; Exhibit 4. Per Studio System, writer credits list a number of Hollywood's most famous and recognizable names, including but not limited to, Jerry Seinfeld, Spike Feresten, and Barry Marder. (Id.) Noticeably, not credited is Mr. Evans. Development notes of the project state the clearly false claim that the film is "Based on an original idea by Jerry Seinfeld." *Id*. Directors were Steve Hickner and Simon J. Smith. *Id.* The cast comprised of a number of the entertainment industry's top talent including Co-Defendant Seinfeld. *Id*. Domestically, the film grossed roughly $126,597,121 dollars. Worldwide cumulative total earnings are $281,797,121 dollars.

21
22
23
24
25
26
27
28

On November 1, 2007, Mr. Evans became aware of the animated film released by DreamWorks. Complaint ¶33-35. The Defendants' infringing film copied numerous copyrightable elements of Plaintiff's work precisely, including but not limited to the title and medium of the screenplay, dialogue, structure, themes, choices of shots, camera, angles, colors, lighting, textual descriptors, and other artistic and expressive elements of Plaintiff's work. In utter shock and disbelief that such a major company would infringe upon his intellectual property In an attempt to remedy this obvious infringement, Mr.

*PLAINTIFF JOHN EVANS OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS*

1    Evans attempted to contact DreamWorks and Universal Filmed Entertainment
2    Group via written communications,  and sought legal counsel, but to no avail.
3    *Id.*

4           On August 22, 2016,  NBCUniversal, a division of Comcast Corporation
5    (hereinafter "CMCSA"), announced it completed its acquisition of
6    DreamWorks Animation SKG Inc. ("DreamWorks").Complaint ¶¶ 26-28. The
7    studio DreamWorks is now a part of the Universal Filmed Entertainment
8    Group. *Id.* Under terms of the deal valued at approximately $3.8 billion,
9    DreamWorks stockholders received $41 in cash for each share of DreamWorks
10   common stock, and post-closing, DreamWorks shares are no longer listed on
11   the NASDAQ. Universal Filmed Entertainment Group is now a division of
12   NBCUniversal, which is now a division of Comcast Corporation. *Id.* Currently,
13   via multiple platforms such as Amazon, Netflix, and Microsoft X-box Movies
14   Downloads, the infringing film entitled "Bee Movie" is still available for
15   streaming and downloading. Collectively, DreamWorks, Stacey Snider, Jerry
16   Seinfeld, Universal Filmed Entertainment Group, and the other potential
17   Defendants are availing this infringing film without Mr. Evans' permission, for
18   their own exploitation and profit. *Id.*

19          On November 4, 2020, Plaintiff mailed a cease and desist letter to
20   NBCUniversal to notify Defendants that their infringing-film bears the exact
21   same title as Plaintiff's screenplay, the film was produced in the same medium
22   Plaintiff had envisioned for his project as well as twenty-eight (28) significant
23   similarities in dialogue, structure, and themes. Complaint ¶ 31 and Wilkerson
24   Decl. ¶3. On November 11, 2020 Plaintiff received a reply from Ms. Emily
25   Birdwhistell in which she stated she was in-house litigation counsel for
26   NBCUniversal Media, LLC, Universal Pictures, a division of Universal City
27   Studios LLC, DreamWorks Animation, LLC ("DreamWorks"), and all related
28   entities (collectively herein, "NBCUniversal"). Exhibit 8 [Reply from

NBCUniversal, dated November 11, 2020] attached hereto Wilkerson Decl. ¶ 3.  Ms. Birdwhistell represented herself as an agent of all of Co-Defendant NBCUniversal's aforementioned affiliated subsidiaries, indicating a relationship between all the related entities. *Id* . Furthermore, although she denied Plaintiff's claims, Mr. Birdwhistell confirmed that: (1) Co-Defendant Snider did depart to DreamWorks Pictures in 2006; (2) Plaintiffs timeline of the DreamWorks Animation acquisition is accurate. Thus, Co-Defendant NBCUniversal is the parent company of the DreamWorks affiliated companies and the acquisition of said companies by NBCUniversal left Co-Defendant Snider's employment at DreamWorks Pictures. Therefore, the singular acquisition by NBCUniversal effecting both DreamWorks Animation and DreamWorks Pictures contradicts the Defendants' assertion that there is no causal link between Co-Defendant Snider, DreamWorks Pictures, and DreamWorks Animation.

## III.   <u>LEGAL STANDARDS</u>

When deciding a motion to dismiss, a court must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp*., 669 F.3d 1005, 1014 (9th Cir. 2012); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012); see also *Guillen v. Bank of America Corp*., No. 5:10-cv-05825, 2011 WL 4071996 (N.D. Cal. 2011). Moreover, a court must "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Lacey v. Maricopa County, 693 F.3d 896, 911 (9th Cir. 2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). **A complaint meets this**

**standard when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."** I*d*.

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." *Id*.

Although motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure are typically confined to the allegations in the pleadings, the Ninth Circuit does permit consideration of documents incorporated by reference in or integral to the allegations in a complaint in resolving Rule 12(b)(6) motions.  See, e.g., *Peter F. Gaito Architecture LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010);  *Knieval v. ESPN*, 393 F.3d 1068 (9th Cir. 2005). Under this rule, courts regularly review the allegedly infringed and infringing works on Rule 12(b)(6) motions.

Additionally, the Corporate Receipt Doctrine is an evidentiary doctrine that, if there is proof that a document was given to and received by an officer or employee of a corporation, it is presumed that every employee/officer has had access to that document, however bare corporate receipt without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003). As discussed in greater detail below, here, the Plaintiff alleges access based on Defendants' letter confessing to such access (see Ex. 3 and 7) and is only invoking the corporate receipt doctrine as a supplemental validation of access amongst the Defendants.

IV.   **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE OF THE INDEPENDENCE BETWEEN DREAMWORKS ANIMATION AND DREAMWORKS PICTURES IS NOT APPROPRIATE BECAUSE IT IS SUBJECT TO REASONABLE DISPUTE IN**

1   **THAT BOTH ARE SUBSIDIARIES WHO HAVE SHIFTED**
2   **THEIR ASSETS TO THE PARENT COMPANY**
3   **NBCUNIVERSAL MEDIA, LLC**.

4   A court may properly take judicial notice of (1) material which is
5   included as part of a complaint or relied upon by a complaint, and (2) matters
6   in the public record. See *Lee v. City of L.A.,* 250 F.3d 668, 688-89 (9th Cir.
7   2001) overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307
8   F.3d 1119, 1125-26 (9th Cir. 2002). Under Federal Rule of Evidence 201(b), a
9   judicially noticed fact must be one "not subject to reasonable dispute in that it
10  (1) is generally known within the territorial jurisdiction of the trial court; or (2)
11  can be accurately and readily determined from sources whose accuracy cannot
12  reasonably be questioned."

13  As suggested in Defendants' Motion to Dismiss and Request for Judicial
14  Notice ("the Request"), Courts take judicial notice of the content of publicly
15  accessible websites (*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th
16  Cir. 2010)), as well as other publicly-available documents that show what
17  information is "'in the public realm at the time[.]'" *Von Saher v. Norton Simon*
18  *Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010) (quotation
19  omitted). See also *Grill v. Lincoln Nat'l Life Ins. Co*., 2014 WL 12588652, *3
20  (C.D. Cal. June 3, 2014) (granting judicial notice as to news publication from
21  New York Times).

22  Generally, a parent corporation can not protect themselves legally form
23  the negligent or criminal acts of the subsidiary if: (1) there is no real
24  independence between the two companies; (2) The subsidiary is insolvent;
25  and/or (3) The subsidiary shifts its assets to the parent company to avoid
26  paying damages. How these rules play out in any given case depends on the
27  specific details of the case.

28

*PLAINTIFF JOHN EVANS OPPOSITION TO*
*DEFENDANTS' NOTICE OF MOTION AND MOTION*
*TO DISMISS*

1    Here, Defendants are attempting to obfuscate the clear causal linkage

2 between Plaintiff's animated-screenplay and Defendants' infringing-film by

3 claiming that neither Co-Defendant NBCUniversal nor Co-Defendant Snider

4 played a constructive role in the production of the infringing-film. Thus,

5 placing fault for this element of copyright infringement on Co-Defendant

6 Seinfeld and the affiliated DreamWorks companies.

7    It is important to note here, that based on admission, public knowledge,

8 and simple searches of "publicly accessible websites" that Co-Defendant

9 Snider, DreamWorks Pictures, DreamWorks Animation, its affiliated

10 companies, its owners and Co-Defendant NBCUniversal have significant

11 overlap as pertains to both personal friendships and professional relationships,

12 including "not-so-discreet backroom discussions between Stacey Snider,

13 Steven Spielberg and Comcast for Snider to take a top post at Universal

14 Pictures." See article on *DEADLINE.com* entitled *Dreamworks Duo Stacey*

15 *Snider and Steven Spielberg Staying Put,* written by Mike Fleming Jr., dated

16 August 14, 2012, available at https://deadline.com/2012/08/dreamworks-duo-

17 stacey-snider-and-steve-spielberg-staying-put-318566/ attached hereto

18 Wilkerson Decl. ¶4 as **Exhibit 9**.

19    Moreover, equally based on admission and public information,

20 DreamWorks Animation originated as a division of DreamWorks SKG, a

21 company founded in 1994 by Steven Spielberg, Jeffrey Katzenberg, and David

22 Geffen (the "S," "K," and "G" of the company name). In 2004 DreamWorks

23 spun off DreamWorks Animation as an independent company, and Katzenberg

24 stayed on as chief executive officer. Id. In August 2016 the corporation was

25 acquired by NBC Universal (also known as NBCUniversal), a subsidiary

26 of Comcast Corporation, which was originally a cable television operator. See

27 article on *Encyclopedia Britannica, Inc.* entitled *DreamWorks Animation*, by

28 Encyclopaedia Britannica, dated December 3, 2020, available at

1  https://www.britannica.com/topic/DreamWorks-Animation; see also article on

2  *Comcast Business* entitled *NBCUniversal Completes DreamWorks Animation*

3  *Acquisition*, sourced by NBCUniversal, dated August 22, 2016, available at

4  https://www.cmcsa.com/news-releases/news-release-details/nbcuniversal-

5  completes-dreamworks-animation-

6  acquisition#:~:text=NEW%20YORK%20%2D%2D(BUSINESS%20WIRE,(D

7  WA) attached hereto Wilkerson Decl. ¶4 as **Exhibit 9**.

8         Here, Defendants' proffered defense of feigned independence from each

9  other is a sad attempt to disprove access, which clearly strains credulity.

10  Collectively, the Defendants are a group comprising of elite studios, co-

11  workers, executives, and friends that openly and notoriously collaborate in a

12  multitude of ventures, even when ethically improper. Ex. 9. However,

13  insultingly, the Defendants are asking the Court to suspend common-sense

14  and Judicially Notice that the Defendants didn't or do not coordinate or

15  communicate as an elite film studio, film executives, co-workers, and friends

16  *coincidentally* when it pertains to the access and knowledge of Plaintiff's

17  animated-screenplay. Public information indicating the willingness for the

18  Defendants' to engage in surreptitious  and unscrupulous business negotiations

19  and tactics only boasts Plaintiff's allegations of copyright infringement via

20  copyright-laundering.

21         Thus, when evaluating the facts in the light most favorable to the

22  Plaintiff and pursuant to Fed. R. Ev. 201(b), the facts Defendants are

23  Requesting Judicial Notice of are improper because they are subject to

24  reasonable dispute using the same metrics and rules stated in Defendants' own

25  Request. Therefore, the Defendants' Request for Judicial Notice should be

26  denied.

27

28

V.     **PLAINTIFF HAS STATED A PLAUSIBLE CLAIM OF COPYRIGHT INFRINGEMENT AGAINST THE DEFENDANTS UPON WHICH RELIEF CAN BE GRANTED**

"To withstand a motion to dismiss a copyright infringement claim under Rule 12(b)(6), a plaintiff must allege: (1) ownership of a valid copyright, and (2) copying constituent elements of the work that are original." *Washington v. ViacomCBS, Inc*., 2020 WL 5823568, at *2 (C.D. Cal. Aug. 20, 2020) (Marshall, J.), citing *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991).

Highly distinguishable from *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), cited in Defendants' motion to dismiss ("Motion to Dismiss" p. 7, ¶¶18-23), Plaintiff has clearly and plausibly alleged and asserts: (1) Plaintiff has a valid copyright for the animated-screenplay for Bee Movie; and (2) Defendants' film copies elements of the work that are original. Complaint ¶¶18,26, and 31. More importantly, even after providing Plaintiff with an evaluation letter admitting to access of Plaintiff's work and not challenging the validity of said letter, Defendants' are relying on their privilege, status, and wealth to shield them from liability in this court by presenting lack of access defense which, again, clearly strains credulity. Plaintiff is not solely relying a on the Bare Corporate Receipt doctrine to prove access in this matter here. Plaintiff is relying on Co-Defendant Snider's own words to prove access:

"Thank you for submitting BEE MOVIE.

It's a humorous and entertaining story, and contained many delightful moments. Although it is not something the studio would like to pursue at this time, I would like to offer one of our story analyst's comments if you are interested in doing more work on your script. There's a cute idea for an animated feature here, with some promising character concepts."

There's a cute idea for an animated feature here, with some promising character concepts. But the material could use some organization; the plot lacks focus. That's partially due to the way the story cuts back and forth between various characters very quickly at the start, which leads to some confusion. It would be good to hang out with the important bees for a longer stretch, so that we'd get to know them better and begin to root for them.

The basic structure overall is what really needs attention. The "Rey and Bumble" storyline and the "Honey Bees v. Killer Bees" storyline never quite come together. There's little sense of a central conflict that builds to a satisfying climax. After all the fighting between Rey and Babe, a sudden fire accidentally set off by the Pastor saves the honey bee hive. Couldn't Rey be more involved in the big finish? Set-ups for minor plot developments also lack pay-offs. For example, Babe gets threatened by Would Bee and Could Bee early on - but they then disappear from the plot until the big fight at the end. It's unclear what Rey's metamorphosis is all about; if it does actually occur, we never get to see it and understand it. While Rey is an appealing misfit, Honey Bee and his other friends are only sketchily suggested. We get that Chubbee is overweight, but the other bees could use stronger personalities. The supporting characters in THE LION KING, for example, are all vivid and memorable, as are the featured ants in ANTZ. Babe is on his way towards being a well-rounded bad guy, because he's insecure (no sting!); it would be great to see him as an even more "human" villain.

It would also help to let the audience in on the rules of the story's world. While the writer has obviously done research on types of bees and bee activities, the story would be even more fun and involving if more bee information could be conveyed. We'd like more of an explanation of

why the killer bees are after the honey bees on the drones' behalf. A BUG'S LIFE, for example, laid out all the necessary information (i.e. concerning ants and grasshoppers) very clearly in its opening.

John, I hope this will be helpful to you. Thanks again for thinking of me and I wish you the best of luck in seeing your project to fruition.

Warm regards." Complaint Ex. 3; and Ex. 7.

Furthermore, in the second evaluation letter provided to Plaintiff, Co-Defendant Snider references the plot of Plaintiff's animated-screenplay for Bee Movie. *Id*. Co-Defendant Sniders in-depth feedback of Plaintiff's animated-screenplay, provided suggestions for characters and plot, infer she had a clear and extensive understanding of Plaintiff's work. *Id.* Defendants' subsequent attempts to point out the differences in their infringing-film don't serve to disprove access to Plaintiff's screenplay, but in actuality boast the validity of the evaluation letter provided by Plaintiff, as Snider states her intentions clearly in the letter.

Therefore,  when evaluating the factual allegations in the light most favorable to the non-moving party, Plaintiff has alleged a plausible claim for copyright infringement upon which relief can be granted.

**VI.**   **JUDGMENT SHOULD NOT BE ENTERED IN FAVOR OF THE DEFENDANTS AS IT PERTAINS TO PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT BECAUSE PLAINTIFF HAS PLAUSIBLY ALLEGED THAT THE DEFENDANTS BOTH INDIVIDUALLY AND COLLECTIVELY HAD ACCESS TO THE PLAINTIFF'S ANIMATED-SCREENPLAY FOR THE FILM BEE MOVIE IN THE FORM A LETTER SIGNED BY CO-DEFENDANT STACEY SNIDER ON CO-DEFENDANT NBCUNIVERSAL'S LETTERHEAD**

1    As stated above, Plaintiff is not solely relying a on the Bare Corporate
2    Receipt doctrine to prove access amongst the defendants. Plaintiff is alleging
3    access based Plaintiff has plausibly alleged that the defendants both
4    individually and collectively had access to the plaintiff's animated-screenplay
5    based on letters signed by Co-defendant Stacey snider on co-defendant
6    NBCUniversal's letterhead. The validity of which Defendants have not
7    challenges. Complaint ¶¶ 18,26, and 31.
8    Therefore, Plaintiff has plausibly alleged access and Defendants' motion
9    to dismiss should be denied.

10

11   **VII.   <u>JUDGMENT SHOULD NOT BE ENTERED IN FAVOR OF THE</u>**
12   **<u>DEFENDANTS AS IT PERTAINS TO PLAINTIFF'S FIRST</u>**
13   **<u>CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT</u>**
14   **<u>BECAUSE PLAINTIFF HAS PLAUSIBLY ALLEGED</u>**
15   **<u>SUBSTANTIAL SIMILARITY BETWEEN PLAINTIFF'S</u>**
16   **<u>ANIMATED-SCREENPLAY AND THE DEFENDANTS'</u>**
17   **<u>INFRINGING FILM</u>**

18   Also stated above, Plaintiff has plausibly alleged substantial similarity
19   between plaintiff's animated-screenplay and the defendants' infringing film  in
20   his Complaint. Complaint ¶¶ 18,26, and 31. Co-Defendant Sniders in-depth
21   feedback of Plaintiff's animated-screenplay, provided suggestions for
22   characters and plot, infer she had a clear and extensive understanding of
23   Plaintiff's work. *Id.* Again, Defendants' attempts to point to the differences in
24   their infringing-film don't serve to disprove access to Plaintiff's screenplay,
25   but in actuality boast the validity of the evaluation letter provided by Plaintiff.
26   Thus, adding to the credibility of Plaintiff's claims. Additionally, these
27   intentional attempts to change the infringing-film just enough to differ from
28   Plaintiff's animated-screenplay, after soliciting and having access to it, are

additional hallmarks of "copyright laundering."  If Defendants' Motion to Dismiss is granted at this point, it would essentially create a doctrine validating intentional theft, obfuscation, and infringement of a protected work. More poignantly, if Defendants' Motion to dismiss is granted, copyright-laundering will be a valid practice for all entertainment studios under the jurisdiction of the Ninth District.

Therefore, Defendants' motions for dismissal should be denied.

## VIII.    PLAINTIFF'S SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF, FOR UNFAIR COMPETITION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, RESPECTIVELY, ARE NOT PREEMPTED BY THE COPYRIGHT ACT BECAUSE EXISTING LAW IS BEING APPLIED TO A SET OF FACTS SIGNIFICANTLY DISTINGUISHABLE FROM THOSE STATED IN ALL OTHER PUBLISHED OPINIONS

As stated above, Defendants individually and collectively engaged in a series of sophisticated actions, after receiving Plaintiff's animated-screenplay, for the purpose of obfuscating title and liability. A series of actions for the sake of clarity, we have deemed – copyright laundering. This collection of intentional actions to intentionally circumvent the intention copyright jurisprudence, compounded by the use of privilege, status, and wealth to produce an infringing animated film by the same name, essentially gaslight the Plaintiff causing severe, mental, and physical anguish, is a set of facts that has not been applied to the federal or state law related to Plaintiff's second, third and fourth claims for relief.

1    Therefore, since there is no precedent controlling law in this matter,

2    Defendants' claim of preemption by the Copyright Act and motion for

3    dismissal should be denied.

4

5    **IX.**         **CONCLUSION**

6    For the foregoing reasons, Plaintiff respectfully requests that

7    Defendants' Motion to Dismiss and Request for Judicial Notice be denied in

8    their entirety.

9

10   DATED: June 5, 2021                        LAW OFFICES OF FAHAD SHARIF

11

12                                     By:  *Roger L. Wilkerson*

13                                          ROGER L. WILKERSON, ESQ.
                                            FAHAD SHARIF, ESQ.

14                                          Attorneys for Plaintiff, **JOHN EVANS**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PLAINTIFF JOHN EVANS OPPOSITION TO*
*DEFENDANTS' NOTICE OF MOTION AND MOTION*
*TO DISMISS*